THE CLINTON WIRE CLOTH COMPANY

*v.*

SAMUEL S. GARDNER *et al.*

*Filed at Ottawa May 14, 1881.*

</div>

1. LANDLORD AND TENANT—*liability of tenant holding over.* Where a tenant for a year or years holds over after the expiration of his lease, without having made any new arrangement with his landlord under which such holding over takes place, the landlord, at his election, may treat the tenant as a trespasser, or as a tenant for another year, upon the same terms as in the original lease, and this though the tenant has no intention of holding over for a year, or of paying the same rent. The law fixes the tenant's liability for hold-

ing over, independent of his intention. The legal presumption of a renewal from the holding over can not be rebutted by proof of a contrary intention on the part of the tenant alone.

2. PLEADING—*of the declaration—in suit to recover rent from a tenant holding over.* In an action by a landlord against a tenant who holds over after the expiration of his term, to recover rent according to the terms of the prior lease, it is not necessary to allege in the declaration the election or assent of the landlord to the alleged tenancy for another term. That is shown by his bringing suit for the rent.

3. SAME—*formal defects cured after verdict.* But if the omission to aver the election or assent of the landlord in such case were to be considered a defect in the pleading, it would be such a defect as would be cured after verdict.

4. INSTRUCTION—*as to definiteness in conclusion.* In an action by a landlord against a tenant holding over, for rent on the same terms, etc., as in the prior lease, where the only issues were the fact of holding over, and whether the holding over was by the plaintiff's consent, the defendant asked the court to instruct the jury that if they found the holding over was under a state of facts such as to rebut the implication of the creation of a new tenancy, then *their verdict should be for the defendant.* The court struck out the words italicized, and inserted instead, "the law is for the defendant upon this point," and gave the same. It was *held,* in view of the issues, there was nothing material in the change to the prejudice of the defendant.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the County Court of Cook county; the Hon. MASON B. LOOMIS, Judge, presiding.

This was an action of assumpsit, brought by Samuel S. and D. B. Gardner, against the Clinton Wire Cloth Company, for the recovery of a year's rent, on the ground of a holding over.

On the first day of January, 1873, S. S. and D. B. Gardner demised to the Clinton Wire Cloth Company the second and third floors of the building known as No. 175 East Randolph street, in the city of Chicago, for a term of five years, at a rental of $175 per month, payable in advance. In January, 1877, they also made a parol lease to the company of the fourth and fifth floors of the same building for one year, from January 1, 1877, at $25 per month, in advance.

The leases expired December 31, 1877, but the company held over until about the middle of January following, and then moved to another building.

The Gardners brought this suit on January 14, 1878, to recover the rent of $200 for the month of January, 1878, on the theory that the company having held over, was liable for the rent under the old leases, there being two counts in the declaration, one upon each lease, and alleging the holding over. Judgment was recovered for that amount of the month's rent, in the county court of Cook county, which was affirméd on appeal to the Appellate Court for the First District, and the present writ of error is to the Appellate Court.

It appeared 'n evidence that there had been some negotiation between the parties in regard to a new lease.

One Wate.:s, who was the agent of the company, had been absent during December, 1877, until the 24th, when he returned, and D. B. Gardner had an interview with him, and offered him the premises for another year at $100 per month, but Waters did not take them at this price, or make any offer for them. It appears that in the afternoon of December 31st, the company commenced to move from the premises; that an expressman had got one load of goods on each one of his two wagons, when Waters came around and directed the loads to be taken off, saying he guessed he had made different arrangements. Waters testified that he suspended operations of moving after having seen the Gardners on that day, on account of a conversation had with them in relation to leasing the premises for another year, from January 1, 1878, the substance of which was: "That I thought the rental talked about was too high. We finally got to the point, when D. B. Gardner says, 'call it $75 a month,' and I remarked that if they would make it even $800 we would take it into consideration. We then separated, I remarking I would go round and stop the teams that were loading up. Gardner made no definite reply to my suggestion of

$800; he made a joking remark, which made me understand he would take it under consideration." This interview and conversation D. B. Gardner denies as occurring. That afternoon Waters wrote and sent three letters to the Gardners, one to the residence of each of them, and one to their office, reading as follows:

*"Chicago, Ill., December* 31, 1877.

S. S. & D. B. GARDNER—*Gents:* Your offer of these premises, 2d, 3d, 4th and 5th floors of 175 Randolph street, at $100 per month, is considered excessive, and is therefore declined. The premises will be at your service on the expiration of the present lease.

Yours truly,

CLINTON WIRE CLOTH CO."

One of which contained the following additional:

" Please be so kind as to reply, stating on what condition you will allow us to remain during the month of January, or till the first of March. An immediate reply will be a favor."

These letters were written about 6 o'clock, and after—as is to be inferred from the evidence—the countermand as above of the removal of the goods. Waters testified that he had no further conversation with the Gardners; that on the 2d of January he sent a messenger in search of the Gardners; that the company commenced to move to 148 Lake street on the 3d of January, and were moving all the time during the thirteen or fourteen days after the 1st of January. The expressman who moved the goods testified, that he commenced moving on the 3d and got through on the 11th of January; that there were about 124 loads in all; moved more or less every day; some days three loads, some fourteen, and one day thirty loads; moved as fast as they could handle the goods; did not move all in one day, because he could not get the goods. The keys were delivered up to the Gardners on the 15th of January.

On the 4th of January the Gardners sent to the company the following written notice:

" *To the Clinton Wire Cloth Co., and H. H. Waters, its Agent:*

You will take notice that you, having held over in the premises described in your lease, to-wit: the second and third floors of No. 175 East Randolph street, Chicago, and also the fourth and fifth floors in same building, 175 East Randolph street, Chicago, held and occupied by you under a contract and agreement; and you, having so held over after, and are now holding over after, the term of your lease and agreement, and a new term having commenced by virtue of such holding, we shall hold you, the said Clinton Wire Cloth Co., for another term, and a second term, under the terms and conditions of your lease and agreement heretofore given you, a new term having commenced, and will so hold you whether you remain in said premises or not.

<div align="right">S. S. & D. B. GARDNER.</div>

*Chicago, January 4, 1878."*

Messrs. SWETT, BATES & HASKELL, for the plaintiff in error:

No contract to pay rent is set out in the declaration.  Circumstances tending to show the assent of the tenant to the former lease are averred, but the declaration does not aver the election or assent of the landlord.  It was error to give judgment on the verdict.

A tenant holding over is a wrong-doer, and retains his possession by wrong, and the owner may make his entry at once without notice to quit. *Russell* v. *Fabyan*, 34 N. H. 218; *Den* v. *Adams*, 7 Hals. 99; 2 Blacks. Com. 150; 4 Kent's Com. 116; *Jackson* v. *McLeod*, 12 Barb. 483; 12 Johns. 182; 1 Cruise's Dig. tit. 9, sec. 10; *Livingston* v. *Tanner*, 12 Barb. 483; *Logan* v. *Herron*, 8 Serg. & R. 468.

Although the assent of the landlord to the holding over may be implied, it can be so only from positive acts. *Boggs*

v. *Black,* 1 Binn. 335; *Jackson* v. *McLeod,* 12 Johns. 182; *Fisher* v. *Prosser,* Cowp. 220; *Cheny v. Batten,* id. 245.

The landlord's assent can not be inferred from the fact of the tenant's holding over. *Brown* v. *Keller,* 32 Ill. 152; *Cairo and St. Louis Railroad* v. *Wiggins Ferry,* 82 id. 230.

Under the declaration the plaintiff in error was a tenant at sufferance, both by the statute and the common law. Underwood's Stats. of 1878, p. 810, sec. 12; 2 Blacks. Com. 150; 4 Kent's Com. 166; Crabbe's Law of Real Prop. 1597.

That an implied tenancy from holding over is a presumption of fact and not of law, counsel cited *Jones* v. *Shears et al.* 4 Ad. & E. 832; *Johnson* v. *Church Wardens of St. Peter,* 4 Ad. & E. 520; *Edgar* v. *Watson,* 1 Car. & Marsh. 494; *Ibbs* v. *Richardson,* 9 Ad. & E. 840; *Thetford* v. *Tyler,* 8 Q. B. 95; *Hyatt* v. *Griffith,* 17 id. 505; *Doe dem. Lord* v. *Crago,* 6 M. G. & S. 90; *Williams* v. *Bartholomew,* 1 Bos. & Pul. 326; *Rogers* v. *Pitcher,* 1 Marsh. 541; *Blyth* v. *Dennet,* 13 C. B. 178; *Oakley* v. *Mouck,* 3 H. & C. 705; *Gray* v. *Bompas,* 11 C. B. (N. S.) 520; *Colvert* v. *Frowd,* 4 Bing. 557; *Bishop* v. *Howard,* 2 B. C. 100; *Hutton* v. *Warren,* 1 Mees. & Wellsb. 466; *Fisher* v. *Prosser,* Cowp. 220.

Negotiations between the landlord and tenant for a further term, under covenants and conditions different from the old lease, may be introduced to the jury to prove the intention of the parties; and (if the tenant holds over during the pendency of such negotiations) he can neither be treated as a trespasser, nor will he be presumed to hold under the terms of the former lease, but will be liable for use and occupation during the time he so holds over. *Hollingsworth* v. *Stennett,* 2 Espin. 717; *Cheny* v. *Batten,* Cowp. 243.

As to the liability of the tenant who holds over for rent for another term, counsel cited Taylor's Landlord and Tenant, (5th ed.) sec. 22; Redman and Lyon's Landlord and Tenant, p. 8; 2 Platt's Law of Leases, 521; Woodfall's Landlord and Tenant, 204; *Doe dem. Lord* v. *Crago,* 6 C. B. 90; *Oakley* v. *Mouck,* L. R. 1st ex. 159; *Cousins* v. *Phillips,* 35 L. J. ex. 84;

*Camden* v. *Batterbury,* 7 C. B. (N. S.) 864; *Smith* v. *Widelake,* 47 L. J. C. P. 282; *Mayor of Thetford* v. *Tyler,* 8 Ad. & E. (N. S.) 95; *Kendall* v. *Morse,* 30 Me. 327; *Lithgow* v. *Moody,* 35 id. 214; *Chesley* v. *Welch,* 37 id. 106; *Russell* v. *Fabyan,* 34 N. H. 218; *Edwards* v. *Hale et al.* 9 Allen, 463; *Emmons* v. *Scudder,* 115 Mass. 372; *Ackerman* v. *Lyman,* 20 Wis. 454.

As to the rule in Illinois counsel cited *Prickett* v. *Ritter,* 16 Ill. 96; *McKinney* v. *Peck,* 28 id. 174; *Brown* v. *Keller,* 32 id. 152; *Otto* v. *Jackson,* 35 id. 357; *Higgins* v. *Halligan,* 46 id. 178; *Griffin* v. *Kinseley,* 75 id. 411; *Cairo and St. Louis Railroad Co.* v. *Wiggins Ferry Co.* 82 id. 230; *Clapp* v. *Noble,* 84 id. 62.

Messrs. STILES & LEWIS, for the defendants in error:

It is claimed that the declaration is insufficient because the election or assent of the landlord to the alleged tenancy is not averred.

The declaration is in assumpsit. The gist of it is contained in the last paragraph, which sets forth the promise and the consideration of the promise. The preceding allegations are matter of inducement. The election and assent of the Gardners was necessarily implied from the bringing of the suit.

The defect in the declaration, if any, was cured by the verdict. *Bullard* v. *Fitch,* 3 Grant's Cases, 268; 2 Tidd's Prac. 919; 1 Chitt. Plead. 712; *Illinois Central R. R. Co.* v. *Simmons,* 38 Ill. 242; *Demesney* v. *Gravelin;* 56 id. 93; *Toledo, Peoria and Warsaw Ry. Co.* v. *McClannon,* 41 id. 238; *Lusk* v. *Cassell,* 25 id. 209; *Barker* v. *Koozier,* 80 id. 205.

When a tenant for a year or years holds over with the consent of his landlord, the law will, in the absence of other facts, imply a renewal of the tenancy for another year upon the terms of the former lease, so far as applicable. The tenant by holding over signifies his desire to continue in the occupation of the premises, and the landlord, by claiming rent or otherwise, signifies his assent. *Clapp* v. *Noble,* 84 Ill. 62;

Taylor's Landlord and Tenant, p. 54; *Stoedman* v. *McIntosh*, 4 Ire. (N. C.) 291; 1 Sharswood's Blacks. 147; Washburn's Real Prop. (3d ed.) 521; 4 Kent's Com. \*112·; *Witt* v. *Mayor*, 5 Rob. (N. Y.) 248; *Schuyler* v. *Smith.* 51 N. Y. 309; *Bradley* v. *Covell*, 4 Cowp. 349; *Osgood* v. *Dewey*, 13 Johns. 240; *Jackson* v. *Salmon*, 4 Wend. 327; *Webber* v. *Shearman*, 3 Hill, 547; *Ames* v. *Schuesler*, 14 Ala. 600; *Parker* v. *Hollis*, 50 id. 411; *Bacon* v. *Brown*, 9 Conn. 334; *Hemphill* v. *Flynn*, 2 Pa. St. 144; *Neel* v. *McCrory*, 7 Coldw. 623; *Shepherd et al.* v. *Cummings*, 1 id. 354; *Hibbard* v. *Newman*, 58 Tenn. 285; *Emerich* v. *Tavener*, 9 Gratt. 220; *Hall* v. *Myer*, 43 Md. 446; *De Young* v. *Buchannan*, 10 G. & J. 149; *Quinette* v. *Carpenter*, 35 Mo. 502; *Hunt* v. *Bailey*, 39 id. 257; *Stoops* v. *Develin*, 16 id. 162; *Decker* v. *Adams*, 12 N. J. 99; *Laquernne* v. *Dougherty*, 35 Pa. St. 45; *Phillips* v. *Monges*, 4 Whart. 225; *Dorrill* v. *Stephens*, 5 McCord, (S. C.) 459; *Rigga* v. *Bell*, 5 T. R. 471; *Digby* v. *Atkinson*, 4 Camp. 275; *Asher* v. *Moss*, 50 Miss. 208; *City of Dubuque* v. *Miller*, 11 Ia. 583; *Haughhurst* v. *Lobree*, 38 Cal. 563; *Gardner* v. *Commissioners*, 21 Minn. 33; *McKinney* v. *Peck*, 28 Ill. 174; *Otto* v. *Jackson*, 35 id. 349.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The main question in this case arises upon the plaintiff's instructions.

Three instructions were given for plaintiff in the county court, all of which contained substantially the same proposition of law, which is stated in a general way in the third instruction, and is as follows:

"The jury are instructed, as matter of law, that where a tenant occupies premises under a lease, for a year or years, and holds over after the expiration of such lease, without having made any new agreement with the landlord, under which such holding over takes place, that then the tenant may, at the election of the landlord, be treated as tenant for another year, upon the terms of the original lease."

The position which ʻseems to be taken by counsel for plain-
tiff in error is, that it is for the jury, and not the court, to
determine whether the holding over amounts to a new tenancy,
and that in determining this question the jury are to consider
the intention of the tenant, and whether there was an assent on
his part. If such were the rule, then the instruction in
question would be clearly erroneous, as it is evident there
was no assent and intention on the part of the tenant to hold
for another year at the same rent. We do not regard such to
be the rule of law, as derived from the authorities, but that
this is one among the cases where a person may be charged,
as upon a contract, without his assent, and contrary to his
intention to make the contract.

In Taylor's Landlord and Tenant, 7th ed. § 22, the rule is
thus laid down: "A tenant for years who holds over after
the expiration of his term without paying rent or otherwise
acknowledging a continuance of the tenancy, becomes either
a trespasser, or a tenant at the option of the landlord. Very
slight acts on the part of the landlord, or a short lapse of
time, are sufficient to conclude his election and make the
occupant his tenant. But the tenant has no such election;
his mere continuance in possession fixes him as tenant for
another year, if the landlord thinks proper to insist upon it.
And the right of the landlord to continue the tenancy will
not be affected by the fact that the tenant refused to renew
the lease, and gave notice that he had hired other premises."

It is noticeable that in the 5th edition of this work, in the
same section 22, the author states, as seeming to be the
sounder doctrine, "that the tenant holding over, and being
therefore at sufferance, while he may become a trespasser by
the landlord's entry, can only be a tenant by mutual agree-
ment."

But in the 7th edition, in this same section, this doctrine as
to mutual agreement appears to be confined to those jurisdic-
tions where tenancies from year to year are unknown; it being
there said: "In Massachusetts and in some of the other New

England States, where tenancies from year to year are unknown, a tenant holding over is said to be in merely by sufferance. He remains a trespasser, and can only become a tenant by mutual agreement."

The doctrine of implied tenancies from year to year, upon a holding over, is distinctly recognized in this State. *Hunt* v. *Morton*, 18 Ill. 75; *Prickett* v. *Ritter*, 16 id. 96, and other cases.

In *Conway* v. *Starkweather*, 1 Denio, 113, there had been a lease of a house for one year, at $300 a year, payable quarterly in advance, the lease expiring May 1, 1842. The tenant held over until the 14th of May, on which day the landlords distrained for a quarter's rent. At the trial in the court below, the tenant offered to show that the landlords, in the latter part of April, proposed to him that if he would stay another year they would reduce the rent to $250, but that the tenant declined the proposition because he had already leased another house; also, that the landlords again proposed that if the tenant would remain they would reduce the rent to $250, and allow him to expend $50 of it on the premises, which proposition he declined for the same reason. The evidence was excluded. The Supreme Court fully affirmed the doctrine as above laid down by Taylor, and in answer to the claim of counsel in the case that the holding over was only presumptive evidence of the continuance of the tenancy, which would have been sufficiently rebutted by the offered proof, the court dissented from such view, saying it was not a case for balancing presumptions, but one where the act of the tenant in holding over had given the landlords a legal right to treat him as tenant, and that it was not in his power to throw off that character, however onerous it might be, and held the offered evidence to have been properly rejected, and that the distress was rightfully made.

This question was elaborately considered in the late case of *Schuyler* v. *Smith*, 51 N. Y. 309. There had been a lease of a dock and premises, which expired May 1, 1864. In

March, 1864, the landlord notified the tenants that if they desired to remain another year, he would increase his rent $100, and thereupon the tenants gave notice to the landlord that they would not keep his wharf after May 1, 1864, and proceeded to hire another wharf, of which the landlord had notice. But on the 1st of May, their new wharf not being in a condition for landing boats, they continued to make a partial use of the former wharf for some twenty days thereafter. The court held the tenants liable for another year's rent.

In the opinion of the court, after laying it down that the law is too well settled to be disputed, that where a tenant holds over after the expiration of his term the law will imply an agreement to hold for a year upon the terms of a prior lease, in reply to the defendants' claim there, as in this case, that this implication of law might be rebutted, and that the tenants might show by proof that they did not intend to hold upon the same terms as the prior lease, it is observed, that the law sometimes steps in and makes agreements for parties which they did not mutually intend, instancing the cases of a wrong-doer converting the personal property of another, intending never to pay him for it, where he may be sued in trover, or as upon a sale upon an implied promise to pay, or of one receiving the money of another not intending to pay him; yet he may be sued for money had and received, upon an implied promise to pay—in neither of which cases would the wrong-doer have the option to determine whether he should be sued in tort or upon contract. So in that case, the defendants held over wrongfully, and the law should not give them the option to determine whether they should be treated as trespassers or tenants. That if the argument as to the necessity of mutuality and consent of both parties was sound, then a tenant might hold over an entire year, and give notice at its commencement that he would not pay as much rent as stipulated in the prior lease, and then claim at the end of the year that he was not liable

to pay the rent because he did not assent. That in such case, no matter what objection the tenant made, so long as the landlord did not consent to new terms, he would be bound by the terms of the prior lease.

In *Hemphill* v. *Flynn,* 2 Penn. St. 144, the defendant had a lease for a year, and held over for one quarter, when he moved out and tendered the plaintiff, the landlord, one quarter's rent and the key, which were received without prejudice to the rights of either party. The suit was to recover for the residue of the year, and the defendant was held liable. It was said, that both upon reason and authority, where the lease was for a definite period, and the tenant holds over, the landlord has the option to treat him as tenant for another year, under the same terms as the former lease, so far as applicable; that the tenant knows the time when his lease will determine; that it is his duty to move out by that time, and surrender the premises to the landlord; that if he do not remove, the landlord may be materially injured; that he is prevented from providing another tenant, and is left at the mercy of one who stays or goes, as it suits him; that it is but just that the landlord should be at liberty to consider the tenant's remaining as an assent on his part to continue, and that such an agreement is implied by the law in that case.

In *Ames* v. *Schuesler,* 14 Ala. 600, a tenant holding over for about a month was held liable for the year's rent. The court held the rule above declared to be well settled, and that the charge of the court below was wrong in that the jury might have inferred from it " that the intention of the defendants to hold for another year, at the rate at which they had rented the previous year, was necessary to fix a liability upon them, whereas the law fixed their liability from the fact of holding over, independent of their intention."

The later case of *Crommelin* v. *Theiss & Co.* 31 Ala. 412, is cited by counsel for plaintiff in error as overruling that of *Ames* v. *Schuesler,* upon the point of the law fixing the lia-

bility of the tenant from the fact of holding over, independently of his intention.

We do not understand the later case as going to such extent. In that case, some time before the expiration of the first year's lease, the parties entered into a new contract, materially different from the original lease, for the lease of the premises for another year. The new contract being verbal, was void under the Statute of Frauds; yet it was held to be good evidence to explain the holding over after the expiration of the first year, and to show that it was not upon the terms of the original lease. That would show the intention of both the parties in that respect, and would be consistent with the general rule as above stated. Of course that is not to prevail against the contrary intention manifested by the acts of both the parties,—landlord as well as tenant. See, further, as to such general rule, *Noel* v. *McCrory*, 7 Coldw. 354, and *Bacon* v. *Brown*, 9 Conn. 334.

There are English cases referred to which would seem to be somewhat variant from the above doctrine; but without stopping to consider them particularly, we are satisfied that the general rule, as declared in the cases above cited, is the one established by the current of American decisions. Cases referred to by counsel, in Maine, New Hampshire and Massachusetts, as being in opposition to such rule, we do not regard as properly applying, in view of the different law in those States as to tenancies from year to year. In addition to the statement in the citation above from Taylor's Landlord and Tenant, that in Massachusetts and some of the other New England States tenancies from year to year are unknown, we understand that in the three States named above it is provided by statute that all leases not in writing shall be effectual to create estates at will only.

We perceive nothing in our own decisions cited by counsel for plaintiff in error inconsistent with the view we here adopt. One of the cases cited, *Griffin* v. *Knisely*, 75 Ill. 411, is certainly adverse to the position of plaintiff in error, that the

legal implication resulting from the holding over of premises may be repelled by the intent on the part of the tenant. There was a written lease in that case, from May 1, 1871, to May 1, 1872, at a fixed rent. Before the expiration of the term the parties verbally agreed to execute a written lease for another year, at a price fixed, but the lessee refused to sign the lease when presented to him, and the landlord withdrew the proposition. The landlord then notified the tenant that if he held over he must pay an advanced rate named. The tenant then signed the written lease, and the question was, whether the holding over was under the old lease or the advanced price. It was held that it was at the advanced price, and the tenant was charged therefor as upon an agreement to pay it, although he did not assent to the payment of the advanced price, and it was most clearly his intention not to pay it.

We do not say that the legal presumption arising from the holding over of premises of a tenancy from year to year, upon the terms of the original lease, may not be rebutted. And the question arising upon the instruction here, is not whether it is correct as an abstract proposition of law, but whether the instruction was proper as applied to the evidence in this case. However the holding over until the 4th of January might be considered affected, under the testimony of the witness Waters, as being in view of pending negotiations for a reduced rent, there can be no pretence of anything of that kind after that time. At that day anything in the way of such negotiation had certainly come to an end, and the company had been distinctly notified that they would be held liable for the former rent, and for a year.

Their holding over afterward, for the space of time they did, was wrongful, and, under the authorities, as we regard, gave to the landlords the right to treat the company as a tenant for another year, upon the terms of the prior lease. The landlords had most distinctly declared their intention to do so.

The facts and circumstances show, undoubtedly, that the company did not intend to become a tenant for another year at the former rent. But the legal presumption, from the holding over, of a renewal of the tenancy can not be rebutted, as shown by the authorities, by proof of a contrary intention on the part of the tenant alone. As, then, as respects at least the holding over after the 4th of January, there was no evidence in the case tending to rebut the legal presumption from the holding over, of a new tenancy upon the old terms, more than the non-assent and contrary intention alone of the tenant —which is held not to be sufficient—it can not be said that the instructions, as applied to the evidence, were erroneous.

Furthermore, the county court gave the following full instructions upon the subject, for the defendant:

" The jury are instructed, that although, as a general rule, the law, by implication, creates a new tenancy for a year, and from year to year, where the tenant holds possession of the premises after the expiration of lease for a year, or for years, under which he went into possession, that such implication is not conclusive, but may be rebutted by the acts of the parties; and that it is a question of fact for the jury to determine, under the instructions of the court, whether or not the holding over is such as to create a new tenancy; and if the jury in this case believe, from the evidence, that the holding over by the defendant after the expiration of its lease or leases with the plaintiffs—if they find it did so hold over— was under such a state of facts as to rebut the implication of the creation of a new tenancy, then *the law is for the defendant upon this point.*"

" If the jury believe, from the evidence, that the defendant remained in possession of the premises in controversy after the termination of its lease or leases with the plaintiffs, with the understanding and agreement between the said parties, either expressed or implied, that such holding over should not operate as a renewal of said lease or leases, then their verdict should be for the defendant."

We do not think there is any just ground of complaint in the giving of the law of the case to the jury.

The court modified the first of the last two instructions by inserting the concluding words, in italics, in place of the words, "their verdict should be for the defendant," which were in the instruction as asked by the defendant, and were stricken out by the court. Of this modification plaintiff in error complains. There were only two counts in the declaration, counting upon the two leases and the liability from the holding over. In view of the issues, we perceive nothing material in the change of the instruction which should have prejudiced the defendants.

Objection is taken to the declaration as insufficient, because the election or assent of the landlords to the alleged tenancy is not averred.

The declaration, after averring the making of the original leases, the occupation and holding over, the continuance by reason thereof of the tenancy for another year at the same rent, avers, that by means of the premises the defendants became liable to pay the sum demanded as rent, and being so liable promised the plaintiffs to pay them such sum on request. The election and assent of the Gardners is shown by the bringing of the suit itself. Besides, the alleged defect, if it were such, would be such an one, we think, as would be cured by the verdict.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

WALKER, J.: I do not concur in all of the reasoning in this opinion.