George Davis, Appellee, v. Tampico Farmers Mutual Telephone Company, Appellant.

Gen. No. 10,166.

Opinion
filed September 18, 1947.  Released for publication October 7, 1947.

SHELDON & BROWN and ALEXANDER L. HAGLUND, both of Sterling, for appellant.

KENNETH W. MILLER and L. E. ELLISON, both of Sterling, for appellee.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

On May 28, 1946, the plaintiff, George Davis, filed his complaint in the circuit court of Whiteside county, against the defendant, The Tampico Farmers Mutual Telephone Company, a corporation, for breach of a written contract of employment.  Under the contract the plaintiff was employed as manager of the company from January 1, 1945, to December 31, 1945, at a monthly salary of $160.  The complaint is drawn on the theory that, by implication of law, the contract was renewed for the year 1946, by the continuation of the relationship of employer and employee between the parties during January and the first four days of

February 1946. It is claimed the defendant breached the contract, by not giving the plaintiff written notice of termination, as provided by its terms. The plaintiff claims damages at the rate of $160 for each month of the year 1946, in which he was not paid the stipulated salary up to the time of the trial on October 14, 1946.

The written contract is dated January 1, 1945, and provides that the plaintiff shall act as manager of the company from January 1, 1945, to December 31, 1945, at a monthly salary of $160 per month payable semi-monthly; that plaintiff shall work such hours as are required to perform his duties as manager; that either party may terminate the contract by giving thirty days' notice in writing.

The plaintiff performed the duties as manager of the company during the month of January 1946, and the defendant paid him $160, in two equal payments, evidently on the 15th and the 31st day of January, being semi-monthly payments of his salary as called for by the contract.

At a meeting of the board of directors of the company held on February 4, 1946, a motion was adopted providing, "That the services of George Davis, as manager, be dispensed with and discontinued from this date, his contract having expired December 31, 1945, and that such office be declared vacant." The plaintiff, a director of the company, was present at the meeting, but did not vote on the motion. The plaintiff inquired when his services as manager should terminate. He was informed by one of the directors there at the meeting that his services as manager ended "at once."

At the close of the meeting held on February 4, the plaintiff asked the directors to check his tools which were on the premises of the defendant. This was done and the plaintiff, with the permission of one of the directors, removed his tools in a vehicle belonging to

the defendant. The plaintiff has not performed, nor offered to perform, the duties of manager of the company since February 4, 1946.

Shortly after the meeting of February 4, the defendant sent to the plaintiff its check for his services as manager for the first four days of February in the amount of $22.63, being a calculation on a per diem basis of renumeration as manager at $160 per month. The plaintiff returned the check to the defendant. Before the trial, the defendant tendered, in open court, $22.63 in cash in full settlement of services performed by the plaintiff as manager for the first four days of February, which amount is now in the custody of the clerk of the trial court.

The suit was tried before the judge without a jury. He rendered a judgment against the defendant for $182.63, being the amount of the defendant's tender plus a salary for one month, or 30 days.

The defendant has appealed, contending that the court should not have entered judgment in favor of the plaintiff for $182.63, or any amount, as the judgment was contrary to law and the evidence in the case. The plaintiff has filed a cross-appeal contending that he is entitled to damages of $160 per month from February 1, 1946, and each month thereafter, until the date of the trial. The case depends on the question as to whether the written contract, dated January 1, 1945, was renewed by law, implying a contract of employment for the year 1946. (*Doherty v. Schipper & Block,* 250 Ill. 128; *Ingalls v. Allen,* 132 Ill. 170; *Hart v. Bradbury,* 201 Ill. App. 82.)

Relative to his refusal to accept the tender of $22.63, for his services as manager for the first four days of February, the plaintiff testified, ''I figured that I had a month's salary coming.'' He further testified that he continued to perform his services as manager for the defendant after December 31, 1945, and further stated that, ''The board of directors said that they

did not have time to take care of it then, and asked me if I would go on until they did have time, and I told them, yes."

The plaintiff was a director of the company in 1945 and 1946. He was employed as manager of the company for the years 1943 and 1944. On January 8, 1945, he attended a meeting of the board of directors and voted "present" on a motion which renewed his contract as manager beginning January 1, 1945, which resulted in the contract of employment, dated January 1, 1945.

The plaintiff did not offer before December 31, 1945, to renew his contract for the year 1946, nor did he inform the directors before December 31, that he would not act as manager in 1946, unless his contract was renewed. It was the understanding of the plaintiff and the directors, that the plaintiff should act as manager, until the board had time to decide whether or not there should be a renewal of the contract.

The meeting held on February 4, when the services of the plaintiff were dispensed with, and the contract terminated, was the first monthly meeting of the board of directors held after the plaintiff mentioned the matter of the contract. He consented at this meeting to act as manager until the board had time to act on the renewal of the contract.

█ We are of the opinion from the testimony in the case that it was the intention of the parties that the matter of the renewal of the contract in question was to be decided by the formal action of the board of directors. Under the testimony of the plaintiff, it would not be just nor fair to the company, to say, or imply, that he had committed himself to a contract of employment with the defendant for the year 1946. He may not at his option determine whether or not the contract had been renewed.

█ Where negotiations are pending between the parties to a contract of employment on the question

of the renewal of the same, the law will not conclude the negotiations by an implied contract, upon the same terms as the `contract of employment, because the relationship of employer and employee is continued under the terms of the contract of employment during, and in pursuance, or in consequence, of the pendency of the negotiations. (39 C. J., p. 50; *White v. United States Gypsum Co.*, 168 Mich. 238, 133 N. W. 501; *Virginia Canners' Exch. v. Scheidt*, 137 Va. 452, 119 S. E. 56; *Borg v. Strauss*, 247 Ill. 462. See, also, *Clinton Wire Cloth Co. v. Gardner*, 99 Ill. 151; *Weber v. Powers*, 213 Ill. 370.)

■ ■ The defendant filed a counterclaim alleging that the plaintiff was indebted to it to the amount of $25 which the plaintiff received from the sale of material of the defendant while he was acting as manager of the company. The plaintiff filed an answer denying the allegation of the counterclaim. After hearing the testimony, the trial judge found the issue for the defendant in the counterclaim and rendered judgment accordingly.

The defendant assigns error on the judgment on the counterclaim, and claims that the plaintiff is indebted to the defendant for $2.37 being the difference between the defendant's tender of $22.63 and its demand of $25.

It is not contended by the defendant that the plaintiff, as manager of the company, did not have authority to sell the material, which consisted of old cable, or junk. The plaintiff admits that he sold the junk to a dealer in Sterling and received $25 cash for it. On the trip to Sterling to sell the junk, the plaintiff was accompanied by a lineman employed by the company, who testified that the plaintiff sold the junk to the dealer in Sterling for which he received $25. It is not claimed that there was a conversion of the junk by the plaintiff, nor that he sold it secretly with the intention, or motive of converting the $25 to his own

use. The defendant contends that the plaintiff did not properly account for the $25 thus received by him.

The plaintiff testified that when he returned to the office of the company on the same day he sold the junk, there were trouble tickets awaiting his attention, upon which he began working immediately; that the cashier of the company had the cash box; that he put the $25 in an envelope and placed the envelope in the safe of the company; that he knew it was the business practice of the company for its employees to turn over cash receipts to the cashier who made regular reports to the treasurer.

The cashier of the company testified that she and the plaintiff were the only persons who knew the combination of the safe while the plaintiff was manager of the company; that she thought that the plaintiff could not have placed the $25 in the safe without her knowledge; that it was her duty to know the contents of the safe. It further appears from the evidence of the cashier that the $25 was never found in the safe.

There is no charge that anyone unlawfully took the money in question. Both the company's cashier and its manager were trusted employees of the company, and the loss of the $25 should not result in unfortunate, or unfair inferences being drawn from the evidence in the case.

It appears that the treasurer of the company had knowledge of the sale of the junk by the plaintiff when the meeting of the directors of the company was held on February 4, 1946. He asked the plaintiff if he had sold the junk and what he did with the money. The plaintiff replied, as he later testified, that he sold it to a junk dealer in Sterling and placed the $25 in the company's safe. The check for $22.63 tendered the plaintiff for his services as manager for the company for the first four days of February 1946, is dated February 16, 1946, and it is countersigned by the treasurer of the company. The tender of $22.63 was made after the suit was brought.

From all the facts and circumstances appearing in evidence, it is our opinion that the question whether the plaintiff, as agent for the defendant, exercised the required care and acted in good faith and justly toward the defendant, was a question of fact for the determination of the trial judge. (2 C. J., p. 959.) There was evidence in the record in support of the finding of the trial judge on the question of the proper accounting of the $25 by the plaintiff, and it not being contrary to the manifest weight of the evidence, the finding of the court is hereby affirmed. (*Moore v. Schoen*, 313 Ill. App. 367; *Penwitt v. City of Chicago*, 315 Ill. App. 444.)

The judgment of the trial court is reversed and the cause remanded with direction to enter judgment in favor of plaintiff for the amount of defendant's tender of $22.63.

*Reversed and remanded with directions.*