**W. C. Radcliff and Hilda F. Livingston, Appellees, v. H. D. Hanger and Kate B. Maxfield, Appellants.**

### Gen. No. 7,912.

1. APPEAL AND ERROR—*prerequisites to reversal of judgment upon facts.* The Appellate Court will not reverse a judgment upon the

facts unless it feels compelled to say, from an examination of all the evidence, that it does not support the verdict.

2. LANDLORD AND TENANT—*right to removable fixtures as between tenant and vendee of premises without notice.* Where the vendee of premises occupied for business purposes by a tenant of the vendor took title to the property without notice of any claim by the tenant to the shelving, heating and lighting system and other removable fixtures, and the tenant, when his lease expired soon after the sale of the property, was permitted by the vendee to remain upon the premises for a portion of a month pending arrangements for removal, such tenant had no right, during such period of temporary occupancy, to remove the fixtures aforesaid, either at common law or under Cahill's St. ch. 80, ¶ 35.

3. LANDLORD AND TENANT—*propriety of instruction touching right to removable fixtures as between tenant and vendee without notice, ignoring alleged rights under statute.* In an action by the vendee of premises occupied for business purposes by a tenant of the vendor, to recover the value of fixtures removed from such premises by the tenant after the termination of the lease and while he was in occupancy by permission of the vendee, an instruction authorizing a recovery by the vendee if the tenant, prior to the sale to plaintiff, admitted to him that he claimed no rights in the premises except as provided in the lease, was not subject to criticism as ignoring such tenant's rights under Cahill's St. ch. 80, ¶ 35, such statute having reference only to the right to removable fixtures as between landlord and tenant, and specifically restricting the right of removal to that period while the relationship existed.

Appeal by defendants from the Circuit Court of McLean county; the Hon. EDWARD BARRY, Judge, presiding. Heard in this court at the October term, 1925. Affirmed. Opinion filed December 31, 1925.

WILLIAM R. BACH, for appellants.

SIGMUND LIVINGSTON, for appellees.

MR. JUSTICE CROW delivered the opinion of the court.

This case comes on appeal from the circuit court of McLean county where the plaintiffs (appellees) obtained a judgment against defendants (appellants) for the sum of $450 and for costs.

Appellants had worked for J. L. Beath for many years and after his death for his widow, in the busi-

ness of selling paints and accessories. The building in which the business was conducted was owned by Mr. Beath, and after his death, by his widow. Some time after the death of Mr. Beath, appellants bought the business and conducted it in the building in which it had always been conducted. The business seems to have been an old one. There were shelves in the building used for the merchandise therein. They were placed by Mr. Beath and remained there until a sale of the building to appellees in 1924. The controversy arises out of the removal by appellants of the shelving, certain heating and lighting system for the room consisting of electric light fixtures, appliances, switches, electric wire conduits, and electric wires in the conduits utilized in the building as part of the lighting system. After the sale of the real estate to appellees, appellants moved out and took away all the articles mentioned. Thereupon suit was brought to recover from appellants the value of the articles taken away. At the trial by jury a verdict was returned for $450, on which judgment was rendered after motion for new trial had been overruled.

There is some controversy as to whether the shelving removed by appellants was attached to the walls and the first or subfloor. There were two floors in the room, one known as the subfloor and the other a finished floor laid on it. Reading all the evidence as abstracted the most that can be said is, it is not certain whether the shelves were fastened to the walls and to the subfloor. There was a contrariety of evidence as to that, but the most reasonable conclusion to be drawn from all the evidence is that the shelves were at some time nailed to the subfloor, and to cleats fastened in or to the walls of the room. They had at some time, surely, if the testimony of some of the witnesses is true. Appellants knew for some time they could not get a new lease and must move out. That the heating apparatus, wires and conduits had been fastened is

not a matter of doubt. Some witnesses say that in pulling the nails holding the shelves some of the bricks of the wall were torn out. The shelving had been in the building a long time. One witness said he had known it 40 years and he thought the shelving had been there all the time. This witness said there were 75 or 100 nail holes altogether that he saw. The jury having heard all the evidence and seen the witnesses and observed their manner of testifying were in better position to appraise the evidence than we who only see it as presented in an abstract. The preponderance of evidence is not determined by the number of witnesses. We are not warranted in reversing the judgment upon the facts unless we are compelled to say from an examination of all the evidence it clearly does not support the verdict. This we cannot say.

It is contended that as matter of law the verdict was wrong and that the judgment, therefore, was erroneous because under section 35 of chapter 80, Smith-Hurd's Statutes, relating to Landlord and Tenant [Cahill's St. ch. 80, ¶ 35], the tenants had the right to remove the fixtures. That section is: "Subject to the right of the landlord to distrain for rent, a tenant shall have the right to remove from the demised premises all removable fixtures erected thereon by him during the term of his lease, or of any renewal thereof, or of any successive leasing of the premises while he remains in possession in his character as tenant."

Appellants relying on the Act of 1905 for their protection, the legal question presented, independent of any question of fact is, does the law apply to the case made by them on the facts? *Fellows v. Johnson*, 183 Ill. App. 42, decided by the Appellate Court of the Second District, is quoted as applicable. It is clear that the reason or motive of the legislature in passing the act was as stated by Judge Carnes, who wrote the opinion. The tenant there did not remove the fixtures until after the possession had been surrendered. The

court holds he could not remove them, regardless of any rule of the common law that might have protected his rights before that legislation. Appellants here contend that that case, interpreting the statute, by inference protects them. The section of the statute used in this case is interpreted and discussed in *Miller v. Bennett, post,* p. 306, the present term of this court.

We are of the opinion it is not authority in support of their contention. All that the court held, or could hold as law presented by the record was, that the tenant, not having removed the alleged removable fixture until after he had surrendered possession, could not afterward do so. There was no occasion to hold more and the court did not undertake to go beyond the question presented for decision. The specific question there presented is not presented here. In this case, before the defendant abandoned or surrendered the premises, they dismantled the shelving, which they did not put in, and wiring, conduits, pipes and radiators used for heating purposes. Appellants put in the heating fixtures, but of that appellees had no notice. Their lease expired September 1. They were permitted by appellees to stay beyond the first of the month, paying therefor. During that period they committed the act complained of.

Appellees had come into possession of the property as purchasers by deed dated 1924. Appellants had attorned to them and recognized, without reservation or restriction, their rights as purchasers. Nothing is claimed by appellants to have been said by either of them as to any claim of right to the fixtures. In a conversation between Radcliff and Hanger before the purchase of the premises was consummated, Hanger told him his only interest in the premises was his tenancy to the first of September. In applying the section they invoke as their defense, it must be noted it regulates only the rights existing between landlord and tenant. It relates to the rights in removable fixtures while in

that relation. Previous to its enactment, *removable* fixtures, as between landlord and tenant, might, of course, be removed. They may under that section still be removed. It was not the legislative purpose to establish that right. But all uncertainty as to when they may or must be removed is eliminated. That was the purpose. There was conflict of decision on that question, not only of the courts of the different states, but of our own courts. Now the rule as to the right of removal where the controversy arises between landlord and tenant, so far as legislative language can make it clear, is, such fixtures must be removed by the tenant "during the term of his lease, *or* of any renewal thereof, *or* of any successive leasing * * * *while* he remains in possession in his character as tenant." It would seem to be clear that the last qualifying clause as to time of removal as between landlord and tenant means, while he remains in possession in his character as tenant under such lease or leases. As between the original lessor and lessees this construction is clear. The controversy here being between tenants in possession under a temporary arrangement with purchasers without notice, the tenants making known no claim to fixtures, it is more in accord with the settled rule with regard to the rights of the parties. The reason becomes stronger in view of the limitation as to the right of removal before the statute.

In *Sanitary District v. Cook*, 169 Ill. 184 (190), the court said: "In *Mason v. Fenn*, 13 Ill. 525, it was said: 'As between landlord and tenant, improvements put on the demised premises by the latter for the purposes of trade or manufacture, and which can be detached without material injury to the estate, may be removed by him before he quits the possession.'" It was held, further, that a new lease made at the expiration of the lease under which the fixtures were installed, no reservations being in the new lease, they could not be removed. But that rule supported by many cases,

English and American, there cited is changed by the section now under consideration. The purpose of the legislation therefore was to enlarge the rule of the common law as to the *right* of removal of fixtures as between landlord and tenant, and to restrict it as to the *time* of removal. Those are the changes made, and they must be imputed to the legislature as its purpose. But the statute does not affect rights of vendees of the premises without notice.

It is contended by appellants not only that the fixtures belonged to appellants but that they retained their character as personal property even as against the appellees as subsequent purchasers. In support of the contention a lengthy quotation is made from *Sword v. Low*, 122 Ill. 487. A reading of the very lengthy opinion in that case discloses a full discussion of the subject of fixtures with citation of many authorities. But so far as the question of the rights of subsequent incumbrancers was involved, and the rights of subsequent purchasers are not different, the decision was adverse to them because the boiler in controversy attached to the mill had been conveyed to the vendor of it by chattel mortgage acknowledged and recorded and that mortgage recognized by the subsequent grantee of the premises.

What was said in *First Nat. Bank of Joliet v. Adam*, 138 Ill. 483 (502), disposes not only of appellants' contention as to the authority of that case on this point, but of this case. There a trust deed had been executed conveying buildings, shed, storehouse, machines, engines and their attachments, oil tanks, iron pulleys, boiler pump and attachments, and all belting, gearing, shafting and pulleys used in a paper mill. It was acknowledged and recorded. Adam claimed all the property by virtue of a lease, quite as meager in its recitals of property conveyed as the lease now before us. Distinguishing the case of *Dobschuetz v. Holliday*, 82 Ill. 371, from *Sword v. Low*, the court said: "We

do not understand that the doctrine of the *Holliday* case is opposed to the views expressed in *Sword v. Low,* 122 Ill. 487. In the latter case an engine and boiler, attached to the realty so as to be capable of removal without injury to either, was held to have retained its character as personalty by reason of the agreement to that effect, even as against subsequent purchasers or incumbrancers. But there the agreement of the parties was made manifest by a chattel mortgage upon the boiler and engine, which was executed, acknowledged and recorded as required by the statute, and thereby notice of the personal character of the articles attached was given to third persons. Here, however, the lease was not acknowledged and recorded in accordance with the Chattel Mortgage Act, and hence the appellant, as holder of the trust deed, was not bound to take notice of any intention manifested by the terms of the lease to treat the fixtures as personalty.    *    *    *    For the reason thus stated, we are of the opinion that the appellee, Adam, acquired no lien upon the mill, buildings, machinery and fixtures, which was superior to the lien of appellant's trust deed.''

Appellants' lease was not recorded, but, if it had been, there is nothing in it that indicates any intention that the fixtures in the building where they carried on the business were to belong to them. They had not built nor put in the shelving. The other fixtures were apparently part of the realty and there was nothing indicating to third persons purchasing the property that the tenants had any legitimate claim to them. But, even if they had, they did not remove them from the premises during the term of their lease nor of any renewal or successive leasing, while they were in possession in their character as tenants under those from whom they claimed the right. That lease had expired. They were in for a month only with nothing said by any one as to their having any right to the fixtures and nothing putting the purchasers, their new landlords,

upon notice of their claim. By that transaction all were affected by new contractual rights and obligations from which defendants can claim no immunity or advantage.

Criticism is made of the first instruction given for plaintiffs. It told the jury, substantially, that if they believed from the evidence defendants removed from the building articles attached thereto and that previous to the purchase of the building by plaintiffs Radcliff asked Hanger whether he had or claimed any rights except those of the written lease under which he was then holding and that he replied he had none, then the verdict should be for the plaintiffs and assess the damages at such sum as they believed from the evidence was the fair cash market value of such articles removed. This instruction is characterized as "vicious in the extreme." It is argued that "it mattered not under it whether the articles were removable under the statute, which is wholly ignored, or not." This criticism manifests a misapprehension by counsel of the purpose and effect of the statute referred to. As we have said before, the statute created no new right to remove fixtures. The right of removal existed before the statute. It was passed in aid of the common law and to render certain the time within which removable fixtures might be removed. That time is, "while he remains in possession in his character as tenant." We have held that he had no right to remove them as against the appellees, because the title to them had passed to vendees without notice of any claim of right to them. The second purpose was to change the common law which denied the right of removal if fixtures were put in under a lease, and at its expiration a new lease was made. The criticism is not valid.

The second is criticised but we think on reading it as abstracted in connection with the evidence, it is not subject to the criticism leveled against it. The third and fourth are as fair toward defendants as the law

justifies under the relations between appellants and appellees. The refusal complained of, of the two instructions offered by appellants, after reading all of them carefully, does not seem to us to have been improper. The matter of them was sufficiently given in others for appellants so far as they should have been given.

A careful consideration of the evidence and of the rulings of the court does not convince us the verdict is not supported by the evidence. Neither do we think any errors in the court's rulings were prejudicial to the rights of appellants. The evidence tended strongly to support a larger verdict than was returned.

Finding no errors justifying a reversal of the judgment it is affirmed.

*Affirmed.*