Balaban and Katz Corporation, Appellant, v. Channel Amusement Company, Appellee.

Gen. No. 44,439.

114

Opinion filed December 15, 1948.
Rehearing denied January 4, 1949. Released for publication January 5, 1949.

SONNENSCHEIN, BERKSON, LAUTMANN, LEVINSON & MORSE, of Chicago, for appellant; ISAAC E. FERGUSON and BEN ROTHBAUM, both of Chicago, of counsel.

BOHRER, BLACKMAN & LOMAN and FRANKLIN J. STRANSKY, all of Chicago, for appellee.

Mr. Presiding Justice Burke delivered the opinion of the court.

Balaban & Katz Corporation filed a forcible detainer action in the municipal court of Chicago against Channel Amusement Co., for possession of the premises occupied by the Broadway Strand Theatre at 1641–53 Roosevelt Road, Chicago, resulting in a judgment for the defendant. Plaintiff appealed.

Marks Bros. Theatres, Inc., lessor, leased the premises to defendant, as lessee, for a 15 year period from August 1, 1929 to July 31, 1944. In acquiring the lease defendant purchased from its predecessor tenant all the personal property, furniture, fixtures, machinery and equipment used in connection with the operation of the theater. On the expiration of the lease by lapse of time, the defendant had the right to remove all of its equipment, furniture, machinery and fixtures. On July 1, 1935, Marks Bros. Theatres, Inc., assigned its interest in the theater to Broadway Strand Corporation. On the same day the latter leased the property to plaintiff as lessee. Defendant, as sublessee, attorned to plaintiff. The rent was at the rate of $2,777.77 for each month for the balance of the term. On December 7, 1936, an agreement was made between plaintiff and defendant under which the original lease was extended to June 30, 1947. The relationship of landlord and tenant was not the only business between plaintiff and defendant and their affiliated companies. Essaness, the parent company of defendant, operated other theaters in which plaintiff was and is interested, namely, the Lamar and Lake in Oak Park and the North Center in Chicago. Defendant has a 50 per cent interest in the Lamar, a 37½ per cent interest in the Lake and a 50 per cent interest in the North Center. In January or February 1947, approximately six months prior to the expiration of the lease, as extended, agents of plaintiff approached Mr. Miles Seeley, one of the attorneys for both Essaness and defend-

ant, and stated that due to the decree in an anti-trust and monopoly case entered in the district court of the United States, for the Southern District of New York, in the case of United States of America v. Paramount Pictures, Inc. et al., the latter and its subsidiaries would have to either sell or buy all theater interests which it owned consisting of more than 5 per cent and less than 95 per cent. See 66 F. Supp. 323 and 70 F. Supp. 53. Hence, plaintiff, a subsidiary of Paramount, would have to buy or sell its theater interests in the Lake, Lamar and North Center theaters. These agents asked Mr. Seeley whether Essaness and defendant would be interested in the following proposition: Plaintiff would sell to Essaness its interest in either the Lake or Lamar theaters and Essaness would sell to plaintiff its interest in the Lake or Lamar, so each group would end up owning one of the two theaters; also that Essaness would then sell its interest to plaintiff in the North Center theatre; that certain lawsuits pending in the circuit or superior court of Cook county, in which plaintiff was the plaintiff and Essaness the defendant would be compromised for $51,138.46; that plaintiff would execute a long term extension of the Broadway Strand theatre lease to defendant, or would sell the fee of that property to either defendant or Essaness; that this arrangement would be predicated upon plaintiff obtaining a reasonable extension on the North Center lease and was further conditioned upon the district court of New York, in United States v. Paramount Pictures, Inc. et al., approving the transaction.

Negotiations continued with Mr. Seeley until the early part of July 1947, when they were resumed with Mr. Edward Blackman, an officer as well as one of the attorneys for Essaness and defendant. These negotiations were carried on from time to time until September 3, 1947, at which time at a meeting in the office

of Mr. Blackman, where there were present representatives of plaintiff, the proposition submitted to Mr. Seeley was resubmitted to Mr. Blackman, who was acting for Essaness and defendant. He suggested that it might be advisable to wait until the United States Supreme Court disposed of the appeal taken in United States v. Paramount Pictures, Inc. et al.; that the Supreme Court might sustain the position of the government and order a separation and divorcement of production and distribution from the exhibition end of the theater business. One of the attorneys for plaintiff said he would give that consideration, that the parties on both sides should give these matters further consideration and that there should be further discussion in connection therewith.

In the meantime, the plaintiff granted to the defendant five separate monthly extensions of its lease. The first monthly extension was for the month of July 1947. This was given to defendant on July 18, 1947, although the written instrument contains the language that it was entered into "as of the 30th day of June, 1947." The extension for the month of August 1947 was given the defendant on August 9, 1947, although the written instrument contains the language that it was entered into "as of the 31st day of July, 1947." The extension for the month of September 1947 was given to the defendant approximately on September 7 or 8, 1947, although the written instrument contains the language that it was entered into "as of the 31st day of August, 1947." The extension for the month of October 1947 was given to the defendant on October 14, 1947, although the written instrument contains the language that it was entered into "as of the 30th day of September, 1947." The extension for the month of November 1947 was given to the defendant on November 7, 1947, although the written instrument contains the language that it was entered into "as of the 31st day of October, 1947."

A letter dated November 7, 1947, from the; attorneys for plaintiff to Mr. Blackman, attorney for defendant, accompanied the extension for the month of November. Therein they recalled that the program of monthly extensions was instituted July 1, 1947 as an "emergency expedient" during conduct of negotiations directed toward possible dissolution of the B & K–Essaness joint interests in the Lake, Lamar and North Center; that no tangible progress had been made since early in the year; that the officers of B & K were anxious that some definite disposition of the matter should be made; that it was their desire that this be accomplished within the "current month"; that accordingly if that "is not accomplished, they will not be disposed to grant any further extensions of the lease." The letter stated that "B & K stands ready to agree to a plan (the actual consummation of which would be deferred until the Supreme Court has passed on the New York case)" and it outlined the plan. The letter concluded by saying: "B & K is willing to agree that if separation of distribution and exhibition is ordered, and if the B & K interests in these three theaters (North Center, Lake and Lamar) are to be sold apart from the other B & K houses, then Essaness will have the right to meet any offer therefor." On Saturday afternoon, November 29, 1947, Mr. Goldberg, one of the attorneys for plaintiff, called Mr. Blackman on the telephone at home, telling him that he would like very much to see their clients come to an understanding and that he must have an "immediate conclusion on it." Mr. Blackman replied that "there isn't anything new," and that he could not give him a "conclusion right now." Mr. Goldberg then stated: "Well, I have got to make a demand, we are going to make a demand Monday." Mr. Blackman stated: "That is unusually short notice, but you are their lawyer, you do whatever you deem necessary to pro-

tect your client's interest and I will do whatever I think is necessary to protect my client's interest." On December 1, 1947, plaintiff served a demand for immediate possession. The telephone conversation of November 29, 1947, was the first indication to defendant that no further extensions on the lease would be made. Clarence Miller, an architect who was familiar with the theater and the personal property, furniture, machinery and equipment therein belonging to defendant, testified that it would take at least three weeks to arrange for and remove defendant's personal property, furniture, machinery and equipment. Defendant asserts that plaintiff, being the operator of 50 theaters in Chicago and 90 theaters in other parts of Illinois, knew this. The architect's statement was not contradicted.

Sec. 12 of the Landlord and Tenant Act, (par. 12, ch. 80, Ill. Rev. Stat. 1947 [Jones Ill. Stats. Ann. 72.12]) provides that when the tenancy is for a certain period and the term expires by the terms of the lease, the tenant is then bound to surrender possession, and no notice to quit or demand for possession is necessary. The last extension of lease was delivered to the defendant on November 8, 1947. The term of the original lease was thereby extended to and including November 30, 1947. The tenancy was for a certain period. No notice to quit or demand for possession is necessary in the case of a tenancy for a fixed term as distinguished from a tenancy of uncertain duration. See *Secor v. Pestana,* 37 Ill. 525; *Johnson v. Foreman,* 40 Ill. App. 456; *United States v. Certain Lands,* 120 F. (2d) 561; *First Nat. Bank of Chicago v. Bohnhorst,* 305 Ill. App. 251. The lease also waived notice to quit and demand for possession. Such waiver of notice has been held to be valid. See *Clark v. Stevens,* 221 Ill. App. 233; *Bogden v. Lasswell,* 331 Ill. App. 395. Where a tenant retains possession after the expiration

of the term of his lease, the landlord has a right to treat him as a trespasser. In *George J. Cooke Co. v. Fitzgerald,* 131 Ill. App. 133, the court said (136):

"Holding over after the expiration of the tenancy does not vest in the tenant any new right or operate to extend his term. In certain conditions the landlord may elect to treat the holding over by the tenant as operating to create a new term, but the election, under such conditions, rests with the landlord, not the tenant. *Clinton Wire Cloth Co. v. Gardner,* 99 Ill. 151; *Keenan v. Kinnare,* 123 Ill. 280."

Plaintiff maintains that when the defendant held over on December 1, 1947, the election to treat it as a trespasser was solely that of plaintiff as landlord and that it clearly indicated such election by making a demand for possession on December 1, 1947.

Defendant does not take issue with plaintiff's "citations and authorities" as abstract propositions of law, but insists that they are not applicable to the facts of the case. Defendant asserts that plaintiff was rightly estopped by the court from demanding possession of the premises without prior reasonable notice given to it that no further monthly extensions would be made. In support of the doctrine of estoppel as a defense, defendant relies strongly on *First Nat. Bank of Crowley v. Andrus* (La. App.), 195 So. 854; *Donovan v. Murphy,* 217 Ill. App. 31; *Craft v. Calmeyer,* 274 Ill. App. 296; *Bondy v. Samuels,* 333 Ill. 535. These cases are not applicable in that in the case at bar there is no showing of a change in position of the defendant induced by the statements or conduct of the plaintiff, which are necessary elements of estoppel. In the Louisiana case the court found that an implied contract existed for a renewal term. The Illinois cases of *Donovan v. Murphy* and *Craft v. Calmeyer* involved the acceptance of late payments on a lease or contract. Such cases involve attempts by a landlord to forfeit the vested rights of a tenant under an existing lease,

or attempts by a seller to forfeit the vested rights of a purchaser under an existing contract, and not a situation where a lease has expired by its own terms. Estoppel contemplates a change in position of one party induced by the statements or conduct of another. *Bondy v. Samuels,* 333 Ill. 535, 545.

We are unable to find any evidence that the defendant was induced by any statement or action of the plaintiff to change its position under the lease. Plaintiff made no commitment to carry on negotiations with defendant or defendant's parent corporation for any specified period of time and that in the meanwhile it would extend defendant's lease. We agree with the position of plaintiff that on the contrary by granting only monthly extensions of the lease, the plaintiff made it clear that it proposed to cut off negotiations at any time that it became apparent to plaintiff that further negotiations were fruitless, and thereupon immediately to repossess itself of the leased premises. Each monthly extension of the lease carried an absolute determination, with no obligation on the plaintiff to warn the defendant that the contract of extension meant exactly what it said. Finally, after several months plaintiff decided to call a halt to negotiations, as it had a right to do, and by letter of November 7, 1947, plaintiff's attorney told defendant's attorney that if negotiations were not successfully consummated during November, the officers of plaintiff would not be disposed to grant any further extensions of defendant's lease.

Defendant emphasizes that the instruments covering the monthly extensions recite that they were entered into as of the last day of the preceding month, whereas defendant's executed copies were not delivered to it until well into the month covered by the respective extensions. We agree with plaintiff that the exact date upon which each instrument of extension was entered into is of no consequence. As each

such agreement was signed, sealed and delivered by both parties during the month to which it applied and was in effect at the end of the month, we cannot accept defendant's contention that the intention and agreement of the parties was that defendant remain in possession as a tenant from month to month after the expiration of its lease on June 30, 1947. There is no point in speculating as to what would have occurred or what principle of law should be applied had the parties not entered into the extension agreements. The fact is that they did enter into them. These solemn agreements represented the determination of the parties as to their agreements. The letter of November 7, 1947, was not intended as a notice demanding possession of the premises. The conversations between the attorneys of the parties to the effect that the defendant could remain ''as long as we were good boys'' took place prior to the execution of the first extension agreement in July, 1947, and were, therefore, merged into the subsequent agreements of extension.

■ Defendant states that it would have suffered great damage and loss had the plaintiff not been compelled to give reasonable notice of the termination and discontinuance of the program of monthly extensions; and that under the terms of the lease defendant was entitled to remove all of the theater equipment, furniture, furnishings and personal property which it purchased from the predecessor lessee, and any and all furnishings, personal property and equipment which it thereafter installed at a cost of large sums of money. Defendant states that the law is well settled in this State that upon the termination of a lease the lessee is obligated to remove his personal equipment and property; that otherwise his equipment and personal property reverts to his lessor; and that he cannot remove the personal property and equipment after the

termination of his lease, citing *Miller v. Bennett,* 239 Ill. App. 306; *Radcliff v. Hanger,* 239 Ill. App. 292. Defendant also states that in addition to the damages that it may suffer by the failure to give reasonable notice of a demand for possession, it had contracted for pictures during November of 1947 to be played during December of 1947; that a cancellation of such contracts would cost it $637.10; that it would be obligated to give severance pay of from one to three weeks to union and other employees at a cost of $729.52; that plaintiff knew these facts because of the many union and other employees that it had on its circuit; that a reading of the record makes it obvious that the sole purpose of plaintiff in its refusal to give defendant "some reasonable notice of demand for possession of the premises after having instituted a program of monthly extensions," and after having given five monthly extensions, was to bring immediate pressure upon it and Essaness to make an improvident, hasty and ill-considered transaction from the point of view of defendant and Essaness. The cases cited by defendant show that there is nothing new or novel about the proposition of law that a tenant is required to be prepared to move its property when its lease expires. The contracts to exhibit pictures on the premises in December 1947 were entered into after the receipt of the warning letter of November 7, 1947. We cannot find anything in the conduct of plaintiff, its attorneys or its agents which induced defendant or its parent company to change its position. The respective parties were represented by able lawyers, who undoubtedly advised them of their rights. The parties had a right to enter into the monthly extensions. The fact that plaintiff granted five monthly extensions of the lease did not in any way obligate it to grant more extensions. For the reasons stated the judgment of the municipal court of Chicago is reversed and the

cause is remanded with directions to enter judgment for possession for the plaintiff and against the defendant.

*Judgment reversed and cause remanded with directions.*

KILEY and LEWE, JJ., concur.