SHERATON-CHICAGO CORPORATION, Plaintiff-Appellee, *v.* EDWARD LEWIS, Defendant-Appellant.

(No. 56070; )

First District—November 2, 1972.

Denenberg and Denenberg, and Sidney Z. Karasik, both of Chicago, for appellant.

310

Thomas E. Moran, of Rothbart, Stein & Moran, of Chicago, for appellee.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

The plaintiff, Sheraton-Chicago Corporation, and the defendant, Edward Lewis, entered into a lease which entitled the defendant to store space in the Sheraton-Chicago Hotel, for the purpose of selling costume jewelry, women's clothing, accessories and greeting cards. The term of lease extended from March 1, 1970, to February 28, 1971. After occupying the premises Lewis purchased a substantial inventory and showcases for the store.

In September 1970 Lewis received notice from the plaintiff of its intention to cancel the lease as of December 31, 1970. It was suggested that he consider operating another concession in the hotel such as a flower shop. On November 3rd the plaintiff sent Lewis another letter stating that it would not cancel the lease as planned unless remodeling work on the hotel was begun; however, he was told that the lease would not be renewed after it expired on February 28, 1971.

Lewis attempted to contact representatives of the Sheraton Corporation both in Chicago and in Boston to seek a renewal. In February 1971 an employee in Sheraton's real estate department telephoned him from Boston and proposed a month to month lease; Lewis refused and demanded a longer term. No further offer was forthcoming from the plaintiff, and as Lewis did not surrender possession of the premises when the lease expired, the plaintiff filed an action for forcible detainer on March 1, 1971.

Lewis mailed a check to the plaintiff dated March 1, with the notation "March rent" on the reverse side. This check was deposited on March 24th, but the check Lewis mailed for the April 1971 rent was returned to him with a letter from the comptroller stating that Lewis' continued occupancy of the premises was wrongful, and that he would be held to full accountability for it. The trial court found that Lewis unlawfully withheld possession of the premises and entered judgment for the plaintiff.

■■■ Lewis contends that receiving and cashing of his March rent check created a hold-over year to year tenancy. The holding-over by a tenant following the expiration of his lease does not vest him with any new right or operate to extend his lease. The landlord exercises the exclusive right either to treat him as a hold-over tenant and permit the terms of the original lease to be again in effect, or to consider him a trespasser. (*Bellows v. Ziv* (1962), 38 Ill.App.2d 342, 187 N.E.2d 265;

*Balaban & Katz Corp. v. Channel Amusement Co.* (1948), 336 Ill.App. 113, 83 N.E.2d 27.) The landlord's acceptance of rent for the month following that in which the lease expired might, standing alone, indicate his election to treat the tenant as a hold-over, but the court need not disregard other facts and circumstances which bear upon the landlord's intention. *Cf. Stillo v. Pellettieri* (1912), 173 Ill.App. 104.

Sheraton-Chicago made its dissatisfaction with the leasing arrangement evident to Lewis five months before the expiration date. Lewis received frequent notices from the plaintiff about terminating the lease. He found himself unable to reach the plaintiff's representative in Chicago, and it was because he hoped the corporate officials in Boston might be more inclined to renew his lease that he contacted them. He engaged in several conversations with them, but admitted that after he rejected the proposal of a month to month tenancy his lease expired with no further offer from the plaintiff. He was given no reason to believe that the lease would be extended. Following its expiration the plaintiff began the forcible detainer action at the earliest possible moment and never indicated an intention to abandon it.

■■ Lewis insists that by the acceptance of his March rent the plaintiff elected to treat him as a tenant from year to year. However, two equally plausible explanations may be suggested from this acceptance, making it less than conclusive in determining the plaintiff's election. First, the check was mailed to the plaintiff and might have been processed routinely by an employee who was unaware that the lease had expired and that a forcible detainer action had been initiated. Second, it might have been assumed that the plaintiff was entitled to the rent as Lewis was still occupying the premises when the March check was deposited. The return of the April rent check with the letter from the plaintiff's comptroller, plus the facts heretofore related manifesting the plaintiff's firm purpose of terminating the lease, demonstrated the lack of any intention to permit Lewis to remain as a hold-over tenant.

■■ At the trial Lewis offered into evidence his rent checks for the months of December 1970, January, February, March and April 1971. The plaintiff objected to the admission of the December, January and February checks claiming they were irrelevant to the issues in the case. The trial court sustained the objection which the defendant asserts was error. The test for relevancy is whether the evidence offered tends to prove a disputed issue. (*Haffa v. Haffa* (1969), 115 Ill.App.2d 467, 253 N.E.2d 507.) Lewis offered the checks to establish the course of dealing between the parties and to show that the March check was accepted in the same manner as the earlier ones. These checks were relevant to his

312

theory of the case and were admissible. However, their exclusion was not so seriously prejudicial as to necessitate a new trial.

The trial court did not err in finding for the plaintiff and holding that Lewis' possession of the premises was unlawful. Its judgment is affirmed.

Judgment affirmed.

McGLOON, P. J., and McNAMARA, J., concur.