ROBERT W. DAEHLER *et al.*, Plaintiffs-Appellees, *v.* MICHAEL OGGOIAN *et al.*, Defendants-Appellants.

First District (1st Division)   No. 78-687

Opinion filed May 7, 1979.

362

George M. Covington, Michael J. Koenigsknecht, and Gardner, Carton & Douglas, all of Chicago, for appellants.

Barrett & Sramek, of Palos Heights, and Thomas P. McLaughlin, of Schaumburg, for appellees.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

This is a forcible detainer action. Plaintiff, Robert W. Daehler, is the owner of an industrial building located at 3550 West Jarvis Avenue in Skokie, Illinois, which he purchased from Joseph Holleck on November 1,

1977, and leased to plaintiff, Stevens Packaging, Inc. Plaintiffs brought this action against the tenant, defendant Michael Oggoian, for possession of the building and for rent allegedly due. A verdict was directed for plaintiffs and a judgment for possession and for rent was entered. The defendant appeals.

Throughout the trial court proceedings, Daehler contended that when he purchased the demised premises from Joseph Holleck on November 1, 1977, any written lease defendant may have had with Holleck had previously expired and defendant was occupying the building only as Holleck's month-to-month tenant, at $1800 per month rent. Daehler further maintained that after he bought the property from Holleck, he told defendant that he was terminating his month-to-month tenancy and gave defendant proper notice to quit the premises by December 31, 1977. He also informed defendant that if he stayed beyond December 31, 1977, his monthly rent would be $5200. Defendant nevertheless remained in possession after December 31 and did not pay the $5200 monthly rent for January and February, 1978. Plaintiffs successfully contended at trial that this series of events entitled them to possession and rent for January and February in the amount of $10,400.

In his verified answer, defendant Oggoian denied that plaintiffs were entitled to possession or rent and asserted three affirmative defenses. The first affirmative defense alleged that defendant was a holdover year-to-year tenant; the second, that a new two-year lease was entered into; and the third, that plaintiffs were estopped from denying defendant's right to possession.

Prior to trial, plaintiffs presented a motion *in limine*, asking the court to forbid defendant or his attorney from mentioning or referring at trial to "any conversations, dealings, agreements and leases" between defendant Oggoian and Holleck, the previous owner, and further requesting that defendant be prohibited at trial from claiming any interest or right in the demised premises other than a month-to-month tenancy. After a hearing on the evidence defendant intended to rely on to prove his affirmative defenses, the trial court granted plaintiffs' motion *in limine*; and, because defendant could only establish his affirmative defenses with the evidence which the court had excluded in its ruling on the motion *in limine*, the court granted plaintiffs' motion to strike the affirmative defenses. For the same reason, the court also refused to allow defendant to add as a fourth affirmative defense that he was entitled to possession beyond December 31, 1977, under a renewal lease which he had acquired from Holleck by exercising an option to renew contained in his original lease.

At trial, Daehler testified that in person and by letter on November 3, 1977, and again by letter on both November 28, 1977, and December 28, 1977, he had informed defendant that defendant was a month-to-month tenant, that plaintiff expected him to vacate by December 31, 1977, and

that if he stayed beyond December 31 the rent per month would be $5200. Daehler further testified that on January 3, 1978, he personally delivered to defendant a landlord's five-day notice to quit, and that he delivered a second five-day notice to quit on February 8, 1978. Daehler also stated that he had received defendant's $1800 rent payments for November and December, but that defendant had never offered to pay $1800 for January and February of 1978. Defendant Oggoian testified that he had offered to pay $1800 as rent in January and again in February, but that Daehler had refused to accept the payments.

At the close of the evidence, the court directed a verdict for plaintiffs and entered judgment for possession and for January and February rent in the amount of $10,400.

On appeal, defendant Oggoian contends that the trial court committed reversible error in granting plaintiffs' motion *in limine*, in striking defendant's three pleaded affirmative defenses and in refusing to allow him to add a fourth affirmative defense.

■■ ■ A forcible entry and detainer action is designed to resolve which party has the right to possess certain real property. A claim for rent may also be joined. Under the language of the statute that a defendant may "give in evidence any matter in defense of the action," but that "[n]o matters not germane to the distinctive purpose of the proceeding shall be introduced" (Ill. Rev. Stat. 1977, ch. 57, par. 5), a defendant may raise defenses which challenge the plaintiff's right to possession or rent. *Clore v. Fredman* (1974), 59 Ill. 2d 20, 25, 319 N.E.2d 18, 21; *Jack Spring, Inc. v. Little* (1972), 50 Ill. 2d 351, 359, 280 N.E.2d 208, 213.

Defendant's first affirmative defense alleged that he had a written lease of the demised premises from Joseph Holleck for a term beginning October 1, 1975, and ending August 31, 1977, and that after August 31, 1977, he continued to occupy the premises and to pay rent, which was accepted by Holleck, thus creating a year-to-year tenancy for the period beginning September 1, 1977, and ending August 31, 1978. He also alleged that he has at all times complied with the terms of the lease, including making, or offering to make, all payments required.

■■■ When a tenant remains in possession after the expiration of his lease and continues to make rent payments which are accepted, the law generally implies that the lessor has elected to renew the lease. (*Sheraton-Chicago Corp. v. Lewis* (1972), 8 Ill. App. 3d 309, 311, 290 N.E.2d 685, 686.) A person in possession under a lease ordinarily may enforce the lease against someone who subsequently purchases the property, regardless of whether the lease has been recorded. *Burnex Oil Co. v. Floyd* (1969), 106 Ill. App. 2d 16, 21, 245 N.E.2d 539, 543.

Plaintiffs argue that when a tenant remains in possession and continues to pay rent after the expiration of his lease, but at the same time carries on

negotiations with the lessor for a new lease, such negotiations negate the possibility of any acquiescence or election by the lessor to create a holdover tenancy. Plaintiffs further argue that the verified allegations in defendant's second affirmative defense are a judicial admission by him establishing such negotiations. In that defense, defendant alleged that prior to the expiration date of his original lease he and Holleck began negotiating for a new lease and that a new lease resulted.

■■ We agree with plaintiffs' contention. In *Yarc v. American Hospital Supply Corp.* (1974), 17 Ill. App. 3d 667, 307 N.E.2d 749, in his original verified complaint plaintiff alleged negotiations for a new lease. In his amended complaint, he alleged a holdover tenancy. The court held that even though the original complaint was superseded by the amended complaint, the verified allegations of negotiations for a new lease were binding judicial admissions and negated any possibility of a holdover tenancy. The same is true here. The verified allegations of the second affirmative defense of negotiations for a new lease are binding judicial admissions which render insufficient the allegations of the first affirmative defense of a holdover tenancy. The trial court properly granted plaintiffs' motion *in limine* so far as it relates to the first affirmative defense and properly struck that defense.

As stated, defendant's second affirmative defense alleged that prior to the expiration date of his original lease he and Holleck began negotiating for a new two-year lease. Holleck originally submitted a new lease, a copy of which is attached to defendant's answer. A letter from Holleck's attorney stating that Holleck was willing to pay the real estate taxes if the monthly rent was set at $1800 is also attached. Defendant was ready to execute the lease and was informed by Holleck that a lease was being drafted and that Daehler, who was buying the property, would "finalize" the lease with defendant in accordance with the terms of the attached lease and letter. Defendant relied on Holleck's representations, continued to occupy the premises and pay rent until Daehler purchased the property and informed defendant that the rent would not be $1800, as agreed with Holleck, but $5200 per month. Defendant made or offered to make all payments and comply with all terms of the attached lease and letter and, until January 1978, all payments tendered by defendant were accepted. On these facts, defendant claimed he had entered into a new lease and was entitled to possession under that lease until August 31, 1979.

As a further proof of the existence of this lease, defendant's attorney, during the hearing on the motion *in limine*, stated that defendant would testify that Holleck said to defendant, "* * * you have got a lease." Defendant also would testify that when he asked Holleck when he would receive his copy of the lease, Holleck said, "[D]on't worry, I'll send it."

■■ Plaintiffs argue that the trial court correctly excluded proof of

and struck the second affirmative defense because the Statute of Frauds prevented defendant from establishing this defense. (Ill. Rev. Stat. 1977, ch. 59, par. 2.) We agree. In order to satisfy the Statute of Frauds, a lease for a term of more than one year or a memorandum thereof must be in writing and contain the names of the parties, a description of the property sufficient enough to identify the property, the amount of rent, and the term of the lease. The writing must also have been signed by the party to be charged, or by some other person authorized by him in writing. (Ill. Rev. Stat. 1977, ch. 59, par. 2; *Lipkin v. Koren* (1946), 392 Ill. 400, 64 N.E.2d 890; *Brunette v. Vulcan Materials Co.* (1970), 119 Ill. App. 2d 390, 256 N.E.2d 44.) It is not necessary that a lease or a memorandum thereof be in one writing, as it may be gathered from several writings taken together, including letters between the parties. (*Western Metals Co. v. Hartman Ingot Metal Co.* (1922), 303 Ill. 479, 135 N.E. 744; *Davito v. Blakely* (1968), 96 Ill. App. 2d 196, 238 N.E.2d 410.) However, to establish a lease or memorandum thereof from more than one writing, only one of which has been signed, the signed writing "must refer expressly to the other writing, or the several writings must be so connected, either physically or otherwise, as to show by internal evidence that they relate to the same contract." *Western Metals Co. v. Hartman Ingot Metal Co.* (1922), 303 Ill. 479, 483, 135 N.E. 744, 746.

■■ The copy of the lease attached to the answer is not signed, and there is nothing in writing signed by Holleck to show that the attorney who signed the letter was authorized by him. Nor does the attorney's letter refer specifically to the lease. On the argument of the motion *in limine*, defendant made no offer of proof that he could produce any evidence in writing to satisfy the Statute of Frauds. In this court he has made no claim that such evidence could be produced. Therefore, the trial court correctly granted plaintiffs' motion *in limine* so far as it relates to the second affirmative defense and properly struck that defense.

In the third affirmative defense, defendant alleged on information and belief that plaintiffs knew of the negotiations between defendant and Holleck and should be estopped from denying that defendant had acquired a new lease from Holleck because plaintiffs had failed to take any action or advise defendant that they did not intend to honor the new lease set out in the second affirmative defense.

■■ Equitable estoppel has been defined as " '* * * the effect of the voluntary conduct of a party whereby he [or she] is absolutely precluded from asserting rights which might otherwise have existed as against another person who has, in good faith, *relied upon such conduct and has been led thereby to change his position for the worse*, and who on his part acquires some corresponding rights.' " (*Atwater v. Atwater* (1974), 18 Ill. App. 3d 202, 210, 309 N.E.2d 632, 639.) When a party's silence is the basis for

estoppel, "it is essential that the party estopped should have knowledge of the facts and the other party be ignorant of the truth and be misled into doing that which he would not have done except for such silence." *Perlman v. First National Bank* (1973), 15 Ill. App. 3d 784, 795, 305 N.E.2d 236, 245, *appeal dismissed* (1975), 60 Ill. 2d 529, 331 N.E.2d 65.

■■ On the record before us, we conclude that the trial court erred in granting plaintiffs' motion *in limine* as to the third affirmative defense and in striking that defense. Defendant, in asserting this defense, relied on some of the allegations and offer of proof which he used in regard to his second affirmative defense. He alleged that prior to the expiration of his original lease with Holleck he entered into negotiations with Holleck for another lease and received the previously mentioned unsigned lease and letter from Holleck's attorney. He further alleged "on information and belief" that plaintiffs were aware of these events, but failed to inform defendant that they would not honor this lease.

In addition to these allegations, there is evidence in the record concerning the issues of whether defendant believed he had acquired another lease from Holleck and whether defendant detrimentally relied on plaintiffs' failure to inform him that they would not honor the lease. The offer of proof included the statement by defendant's attorney that the defendant would testify that Holleck told him: "Yes, you're going to stay here. Yes, you have got a lease. Yes, I'm going to give you the lease," and would further testify that when he asked Holleck when he would receive a copy of the lease, Holleck said: "I'll send you the new lease. Don't worry, I'll send it. Your lease is coming." The offer of proof also included the statement by defendant's attorney that a nonparty witness, who was present when defendant said to Holleck: "By the way, what about my new lease?" would testify that Holleck answered, "Don't worry, I'll send it."

The record also contains evidence that Holleck accepted the September and October 1977 rent from defendant and that Daehler accepted the November and December 1977 rent from defendant. Also, there is evidence that defendant had detrimentally relied on plaintiffs' silence. Defendant testified at trial that until October 1977 he had occupied the demised premises as well as the building next to these premises. This other building was also owned by Holleck and it, too, was sold by Holleck to Daehler. Daehler knew before he bought the buildings that defendant was occupying them with a business involving many tons of machinery, but Daehler never asked defendant about his right to possession. Defendant further testified that in October 1977, at Holleck's request, he moved all of the heavy machinery he had in the other building into the demised premises at considerable cost. In addition, plaintiff Daehler testified that he knew defendant was moving machinery into the demised premises during the weeks immediately before the sale of those premises

to him on November 1, 1977, and also testified that November 3, 1977, was the first time he informed defendant he was a month-to-month tenant and should vacate the premises by December 31, 1977. Finally, defendant testified that rather than moving the machines from the other building into the demised premises, he also could have sold them or put them in storage, because he had no current use for this machinery. This testimony is relevant to the issue of detrimental reliance. It shows that if plaintiff Daehler had informed defendant earlier that he would not honor any lease except one that was month-to-month, defendant might have felt it was impractical to go to the expense of moving the machinery to the demised premises and instead would simply have sold it.

In view of the allegations and evidence in the record concerning the defendant's estoppel defense, we cannot conclude that this defense was substantially insufficient in law. The action of the trial court in granting the motion *in limine* and in striking the third affirmative defense was error.

Defendant's fourth affirmative defense, which the trial court denied him the right to file, was that he had acquired a three-year renewal lease by exercising an option to renew contained in the original lease signed by defendant and Holleck. This lease, for a term beginning October 1, 1975, and ending August 31, 1977, gave defendant a three-year option for renewal, but did not specify the manner for exercising the option.

At the hearing on the motion *in limine,* defendant's attorney stated defendant would testify that the lease incorporated in his answer was, in fact, the original lease between himself and Holleck, that he and Holleck had signed the lease in each other's presence, and that he was familiar with Holleck's signature. Defendant would further testify that in August of 1977 he told Holleck, "I want to renew my lease. I'm renewing my lease."

■■■■ The trial court was in error in excluding this evidence and in refusing to allow defendant to plead this defense. The evidence offered by defendant to prove the existence of the original lease between himself and Holleck was competent. In addition, when a written lease is silent concerning the manner in which an option to renew is to be exercised, the lessee may exercise the option by orally notifying the lessor prior to the lease's expiration that he wishes to renew. (*Kaybill Corp. v. Cherne* (1974), 24 Ill. App. 3d 309, 320 N.E.2d 598.) This does not violate the Statute of Frauds because the lessee "holds for the extended term by virtue of the original lease which is in writing and satisfies the statute." (*Kaybill Corp. v. Cherne* (1974), 24 Ill. App. 3d 309, 321, 320 N.E.2d 598, 608.) Further, testimony offered as the oral statement or statements used to renew the lease is not hearsay. (McCormick, Handbook of the Law of Evidence 588 (2d ed. 1972).) Testimony by defendant that he told Holleck, "I want to renew my lease. I'm renewing my lease," would be competent evidence to show he had exercised his option and acquired a renewal lease.

■■ It is true that defendant's attorney did not present the proposed amendment to the court at the time of his oral motion for leave to file this defense. (*Atlee Electric Co. v. Johnson Construction Co.* (1973), 14 Ill. App. 3d 716, 303 N.E.2d 192.) However, the offer of proof he made at that time fully and clearly disclosed to the trial court the reasons and facts which were the basis for his request. (*Hassiepen v. Marcin* (1974), 22 Ill. App. 3d 433, 318 N.E.2d 162.) His request should have been granted. Ill. Rev. Stat. 1977, ch. 110, par. 46(1).

Plaintiffs argue that because defendant had to exercise his option prior to the expiration of his original lease for it to be effective, defendant's offer of proof was insufficient because nothing was said about when the option was exercised and that the offer of proof was also inadequate because the attorney for defendant, rather than defendant himself, stated that defendant would testify he told Holleck, "I want to renew my lease. I'm renewing my lease." We disagree.

■■ The purpose of an offer of proof is to indicate to the trial court, opposing counsel and a reviewing court the substance of the evidence expected to be offered. (*Moren v. Samuel M. Langston Co.* (1968), 96 Ill. App. 2d 133, 237 N.E.2d 759, *appeal denied* (1968), 39 Ill. 2d 626; *Schusler v. Fletcher* (1966), 74 Ill. App. 2d 249, 219 N.E.2d 588, *appeal denied* (1967), 35 Ill. 2d 630.) "To some extent, the requisite formality of an offer of proof will depend upon the circumstances of the particular case. Where it is obvious that the witness is competent to testify to a fact, and it is obvious what his testimony will be if he is permitted to give it, a brief statement by counsel may suffice." (*Hession v. Liberty Asphalt Products, Inc.* (1968), 93 Ill. App. 2d 65, 71, 235 N.E.2d 17, 21.) The offer of proof by defendant's attorney was sufficient. It informed the trial court, opposing counsel and this court of the substance of the evidence to which defendant could competently testify, *i.e.*, that he would state he orally told Holleck in August, before the expiration of the lease, that he was renewing his lease.

Plaintiffs argue that it is improper for defendant to contend he has a renewal lease from Holleck, because this is inconsistent with defendant's second affirmative defense that he acquired a new lease from Holleck. Plaintiffs point out that the original lease contemplated renewal for a three-year term, presumably at the original monthly rent of $1400. Plaintiffs urge that defendant's allegations in his second affirmative defense concerning negotiations for, and receipt of, a lease for a two-year term at $1800 per month rent necessarily preclude defendant from also claiming he acquired the renewal lease.

■■ ■ In making this argument, plaintiffs ignore the fact that a defendant may plead inconsistent defenses. (Ill. Rev. Stat. 1977, ch. 110, par. 43(2).) A party may plead inconsistently when he is not sure whether "the facts belie the alternative." (*McCormick v. Kopmann* (1959), 23 Ill. App.

2d 189, 201, 161 N.E.2d 720, 727.) This means that when a party lacks knowledge of the facts, he may plead inconsistently. (*McCormick v. Kopmann* (1959), 23 Ill. App. 2d 189, 161 N.E.2d 720.) It also means that when a party knows the facts, but cannot be sure of the legal effect of those facts, he may plead inconsistent theories of recovery of defense, and the proof at trial will determine which theory, if any, entitles him to a favorable verdict.

Lack of certainty concerning which legal theory to rely on describes the defendant's situation in the instant case. The facts of which defendant claims he was aware were that he had told Holleck in August 1977 he wished to renew his lease, that after discussions with Holleck he was sent an unsigned lease for a two-year term, and that he received a letter dated September 21, 1977, from Holleck's attorney stating that Holleck wanted $1800 per month rent. The legal effect of these facts may have been that defendant acquired a renewal lease, which subsequently was merely modified from a three-year term at $1400 per month to a two-year term at $1800 per month. On the other hand, the legal effect of these facts may have been that defendant acquired a renewal lease which was subsequently rescinded in an attempt to replace it with another lease. Defendant clearly could not have been expected to know the legal effect of these facts. Therefore, the fact that he asserted one defense based on a new lease should not prevent him from asserting the defense that he has a renewal lease.

■ The fact that defendant's allegations that he negotiated for and acquired another lease from Holleck justified striking his holdover tenancy defense is not inconsistent with our holding as to the renewal lease. Defendant's lease negotiations with Holleck, regardless of whether they are viewed as negotiations for a new lease or as negotiations to modify an existing renewal lease, negate the possibility that defendant acquired a holdover tenancy. (*Yarc v. American Hospital Supply Corp.* (1974), 17 Ill. App. 3d 667, 307 N.E.2d 749; *Norville v. Dambacher* (1962), 35 Ill. App. 2d 212, 182 N.E.2d 337.) Therefore, the legal effect of defendant's lease negotiations is clear with respect to whether defendant has a holdover tenancy. When facts are known and the legal effect of these facts is clear and belies an alternative, there is no reason to permit alternative pleading. On the other hand, when the facts are known but their legal effect is unclear, then pleading alternative theories is justified. This was the situation with respect to the new lease and renewal lease defenses.

For the foregoing reasons, the judgment of the circuit court of Cook County entering judgment for plaintiffs for possession and rent is reversed. The trial court's order striking the third affirmative defense and its refusal to allow defendant to plead a fourth affirmative defense are reversed, as is its order granting plaintiffs' motion *in limine* as it relates to those defenses.

The trial court's order striking the first and second affirmative defenses is affirmed, as is its order granting plaintiffs' motion *in limine* as it relates to those defenses. The cause is remanded for further proceedings consistent with the views here expressed.

Reversed in part, affirmed in part, and remanded.

GOLDBERG, P. J., and McGLOON, J., concur.