DIANNE FLEEMAN, Plaintiff-Appellant, v. CHARLES K. FISCHER, Defendant-Appellee.

Fifth District   No. 5—91—0512

Opinion filed May 19, 1993.

GOLDENHERSH, J., dissenting.

John W. Halloran, of Callis Law Firm, P.C., of Granite City, for appellant.

Jerome E. McDonald, of Campbell, Black, Carnine & Hedin, P.C., of Mt. Vernon, for appellee.

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:

Plaintiff was born on May 17, 1969, at St. Mary's Hospital in Centralia, Illinois. During the delivery, plaintiff's shoulder became lodged against her mother's pubic bone, a condition known as shoulder dystocia. Dr. Fischer, the obstetrician, applied forceps and exerted traction in a successful attempt to free the shoulder. As a result of the traction, the plaintiff sustained a permanent injury to a network of nerves called the brachial plexus.

Plaintiff filed suit in 1988 against both Dr. Fischer and St. Mary's Hospital, but in 1989 St. Mary's was voluntarily dismissed. The case against Dr. Fischer was tried in 1991, and the jury returned a verdict in defendant's favor. Plaintiff claims the trial court erred in (1) refusing to excuse for cause jurors who had been treated by defendant or who had children delivered by defendant; (2) refusing to allow plaintiff to use subsequent pregnancy records of Mrs. Fleeman during the cross-examination of defendant's expert, Dr. Kurzel; and (3) allowing

defense counsel to cross-examine plaintiff's expert about the alleged negligence of St. Mary's Hospital.

Plaintiff relies on *Marcin v. Kipfer* (1983), 117 Ill. App. 3d 1065, 454 N.E.2d 370, on the first issue. *Marcin* reversed a defendant's verdict in a medical malpractice case because the trial court had refused to excuse for cause two jurors who were patients of the defendant at the time of the trial. Plaintiff contends that the ruling of *Marcin* should be extended to include former patients of defendant doctors, particularly if the earlier treatment involved the delivery of a child. Plaintiff submits that the birth of a child is such a significant event that a successful delivery, although in the past, would make it impossible for a patient-juror to be objective. Plaintiff argues it would be inconceivable for the trial court to have allowed any juror to sit who had indicated displeasure with the defendant's care, even though she maintained she could be impartial, and that the same ruling should apply to jurors who expressed satisfaction.

These are strong arguments, as *Marcin* recognized:

> "Here, for the two jurors to have found for plaintiff, they would have had to find their personal physician to have been incompetent in his treatment of decedent. Although the traditional close relationship of trust and confidence between patient and physician may no longer be as strong as it once was, it still has considerable strength." (*Marcin v. Kipfer*, 117 Ill. App. 3d at 1067-68, 454 N.E.2d at 372.)

The trial court in this case refused to adopt the plaintiff's suggested blanket rule of exclusion of all such jurors and indicated instead that the plaintiff would be allowed to inquire of individual jurors to determine whether a challenge for cause should be allowed. This procedure was within the discretion of the trial court keeping in mind the concerns of *Marcin* in this type of case.

The difficulty with the plaintiff's position on this point is that the plaintiff challenged only two of the complained-of jurors for cause. She did not challenge the other jurors for cause; instead, she used preemptory challenges to exclude them. Plaintiff also accepted a former patient on the jury even though she had a preemptory challenge available which could have been used to exclude the juror.

Plaintiff's failure to move to strike the jurors for cause constitutes a waiver on this issue. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267; *People v. Higgins* (1975), 27 Ill. App. 3d 266, 327 N.E.2d 135.) In addition, the plaintiff's failure to utilize all her preemptory challenges is also a waiver of this issue. *People v. Townes* (1985), 130 Ill. App. 3d 844, 474 N.E.2d 1334.

•2  Plaintiff's second claimed error is the court's refusal to allow her to utilize subsequent pregnancy records. A further discussion of the facts is necessary for a proper understanding of this issue. One of the disputed questions in the case was the size of the plaintiff's mother's pelvis. A radiologist's report of an X ray taken a few days before plaintiff's delivery read: "Large child, small pelvis." Plaintiff contended that this information should have suggested the possible necessity of a delivery by cesarean section to the defendant. Defendant and his experts testified that in 1969 X rays were not a reliable method of determining pelvic size. In addition, defendant testified that his physical examination of plaintiff's mother revealed that she had a pelvis of normal size. This testimony provided the background for plaintiff's attempts to use the subsequent records. Plaintiff first established that the size of an adult woman's pelvis does not change and then attempted to use records from two subsequent pregnancies that reflected the mother's pelvic size. The trial court refused to allow reference to the records.

Plaintiff contends that *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, would allow her to use the records. The trial court was concerned about their use for two reasons: (a) that plaintiff was actually trying to prove the entries as substantive evidence, and (b) that they had not been properly authenticated. The treating doctor in the subsequent pregnancies was dead. Plaintiff argued that she should be allowed to use the records to test Dr. Kurzel's opinion and/or to impeach his testimony that the plaintiff's mother's pelvis was of an adequate size.

The trial court ultimately rejected the use of the first record which dealt with a 1971 entry, "Type of pelvis: borderline," because it was too subjective. Plaintiff then referred to a 1976 record which apparently had some measurements on it made by a radiologist or an X-ray technician. The court rejected this document because the plaintiff had not deposed the person who made the entries and introduced them through that person.

Plaintiff is correct that *Wilson v. Clark* does not require the admission of the record into evidence in order for it to be used as the basis of an expert's opinion, and presumably the same rule would apply to a record being used to test an expert's opinion, but there are further problems with this entry. It may be that plaintiff established that the 1976 record was of the type that experts rely upon through the defendant's reference to some part of it during the cross-examination of plaintiff's expert. However, no one established that the entry was authentic. Much more important for our purposes is the fact that

the record on appeal does not contain the excluded medical record. We are therefore unable to determine whether the entry was significant enough to warrant reversal. In addition, no offer of proof was made to establish what defendant's expert's response would have been when his opinion was tested by confrontation with the subsequent entries.

> "While a formal offer of proof, in the form of questions to the witness outside the hearing of the jury, is no longer the sole means of perfecting appeal from the denial of an evidentiary request (see *Daehler v. Oggoian* (1979), 72 Ill. App. 3d 360, 390 N.E.2d 417), the unsupported speculation or conjecture of counsel is insufficient. A party cannot obtain reversal based on the failure to admit evidence without showing what that evidence would be in order to allow a court of review to assess the prejudice inuring from the exclusion. (*Lukas v. Lightfoot* (1985), 131 Ill. App. 3d 566, 569, 476 N.E.2d 1; *People ex rel. Fahner v. Hedrich* (1982), 108 Ill. App. 3d 83, 91, 438 N.E.2d 924.)" *Hall v. Northwestern University Medical Clinics* (1987), 152 Ill. App. 3d 716, 722, 504 N.E.2d 781, 785.

■ Plaintiff's third issue deals with the cross-examination of her expert by use of a letter that implicated St. Mary's Hospital as well as Dr. Fischer. Plaintiff's expert's letter had been attached to plaintiff's section 2—622 affidavit (Ill. Rev. Stat. 1987, ch. 110, par. 2—622) in support of her complaint. According to the plaintiff, after additional information became available through discovery, it was determined that St. Mary's Hospital was not culpable, and plaintiff voluntarily dismissed it. Defendant contends that the expert's letter was a prior inconsistent statement and was properly used to impeach the witness. Plaintiff responds that, since St. Mary's was no longer a party, the earlier statements about its possible culpability were irrelevant.

The purported impeachment was improper. Plaintiff's expert did not testify on direct that Dr. Fischer's conduct was the *sole* cause of plaintiff's injury. If he had so testified then his prior report, which indicated that the conduct of *both* Dr. Fischer and St. Mary's Hospital caused the injury, would have been inconsistent. It would also appear to be collateral, even in the latter example, but we need not explore that possibility further.

What must be determined, however, is whether the error warrants reversal. We conclude that it does not. The purported impeachment is relatively brief, and it was not mentioned in defendant's opening statement or argued in his summation. Defendant's theory was

not that some other entity such as St. Mary's Hospital was responsible; he maintained throughout the case that no one was responsible.

In view of these factors, we do not think that the error requires reversal.

Affirmed.

WELCH, J., concurs.

GOLDENHERSH, J., dissenting:

I respectfully dissent. It is my view that the trial court committed prejudicial and reversible error in its ruling on the use of the subsequent pregnancy records and in allowing cross-examination concerning alleged negligence of St. Mary's Hospital.

The majority justifies the trial court's actions on refusal of the subsequent pregnancy records claiming that the point was not adequately preserved for our review, since the actual records attempted to be used as impeachment are not a part of the record before us. We are in a position to review alleged error of this nature when, as in this case, the position is adequately described in the record either by summary offers of proof or other statements as to the matter involved. An example of this is *Clay v. McCarthy* (1979), 73 Ill. App. 3d 462, 392 N.E.2d 693, in which a summary statement of counsel was not challenged as to the accuracy of its content and was acceptable to the appellate court, although the *Clay* court said that this method was not preferred. In the case at hand, the contents of the 1971 and 1976 records were adequately described, and especially in the case of the 1976 records, it was noted without contest that it contained pelvic measurements. Prior to counsel's attempted use of this under *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, the expert had admitted that pelvic measurements do not change. Plaintiff's counsel then attempted to lay a proper foundation under *Wilson v. Clark* that this type of material is commonly used and relied upon when objection was made and sustained. The trial court's sustaining of that objection and appellee's claim that plaintiff attempted to use it substantively run counter to both the holding and the policy decision underlying *Wilson v. Clark*. Plaintiff's counsel clearly attempted to use this in a proper impeachment manner under *Wilson v. Clark* and was denied the opportunity to lay a proper foundation without any sound reason apparent in the record. The trial court ruling that plaintiff's counsel would have to produce the radiologist to authenticate the record clearly run counter to *Wilson v. Clark*. The denial to plaintiff of the

opportunity to establish the reliability of these records under *Wilson* constituted prejudicial error. In my view, it was error central to the case and, after a thorough review of the record, there is no way that I could say with confidence that the error was not prejudicial. This alone would be a basis for reversal and remand.

While I concur with the majority on the third issue in that cross-examination of plaintiff's expert concerning this letter was error, I disagree that it was not prejudicial. As pointed out by the majority, the thrust of the cross-examination clashed with defendant's own theory, that no one was responsible. While not emphasized in the rest of the trial, it was a source of confusion. More important in the context of this case, when taken with the error committed by the trial court's refusal to allow use of the subsequent medical records concerning pelvic size, prejudicial error was committed, and in my view, this judgment should be reversed and remanded.